Good morning. I'm Hollis McMillen, arguing on behalf of Terry Emmert, the appellant in this case. May it please the court, counsel. This case involves what I perceive to be really difficult questions regarding what's sufficient pleading when one has a condemnation cloud blight. And such cases don't fit neatly within the standards that are set out either in the Monell case, which is critical here, or in the Williamson case. Why is Monell critical here? If Williamson applies and Monell doesn't matter, right? Yes. But I think that... So why don't we start with Williamson? All right. And this will illustrate, I think, the difficulties, the complexities of this case being a condemnation cloud blight case. It is a situation in which there has not been any administrative action. The county has not passed any rules, it hasn't made regulations. There is nothing that makes it easy to determine whether or not this is a case where there's been a facial challenge to a rule or whether there is an as-applied challenge to a rule as it has been applied. And what is the final action that you're challenging? It seems to me that there's nothing that is final here as to the properties in question. I mean, you've argued that the actions are final with respect to particular buyers, but that doesn't preclude the additional buyers from being sought out. So I don't understand how the final prong is met. Well, and that points out one of the difficulties when you have a condemnation cloud blight case, because it's a way that the county can use to suppress property values during a period of time when the county is trying to decide whether to condemn certain properties or not. In fact, in this instance, they didn't condemn the properties, right? I'm sorry? They did not, in fact, condemn the properties. No, they did not condemn the properties, but what they did is acting through the various agents of the county is they prohibited Mr. Emmert from developing some of these properties. They actively discouraged buyers on all of these properties. Well, they discouraged them. I really found the pleadings hard to follow. They prohibited him from building. How could they do that? I mean, they told him they might condemn it later on, but how could they prohibit him from building? You mean by not giving him variances? Is that what you're saying? Well, in one of the pieces of property that we allege in the complaint, there was a long series of efforts that were made by Mr. Emmert to develop property. And on one of those properties, he constructed a tilt-up building that had been occupied by a tenant. And when that tenant left, the tenant who came to take over that property was denied a permit, a usage permit. And that permit, because of the denial of the permit, of course, that person did not then occupy the building. And by doing that, they rendered Mr. Emmert unable to. So, aside from the finality question, you clearly do have a so-called inverse condemnation cause of action in Oregon, right? Yes. So, why doesn't Williamson apply? Well, Williamson doesn't apply for a couple of reasons here. Number one, I think that the conduct that we're talking about here in the condemnation cloud blight is most closely akin to a facial challenge because that's the way it was looked at originally, I think, by the Manchester 8 judges. But Judge Hernandez eventually concluded that that really wasn't it at all. Also, I'm not entirely sure that the facial challenge as applied has a whole lot of life left in it in terms of the Supreme Court law, does it? I think you're absolutely right, and that was something that was extensively discussed, I think, by Magistrate Judge Stewart in one of her opinions. I.e., in the direction of it's all covered by Williamson, why not? Well, if Williamson no longer has application to facial challenges, and this is a facial challenge. Well, that's what I'm trying to find out. As I understand it, the facial challenge law rule came in Yee, and it was based on a substantive rule that was later overturned in Lingo, this substantial purpose or something. So what's left of the facial challenge issue? It seems to me that understanding what a facial challenge even is in the takings context is sort of difficult. It seems that maybe if you challenged it as not a public use, maybe that would be a facial challenge. But anything that claimed that you should have been paid but weren't, what difference is it what we call it? You could have gone to court in Oregon and made that claim. Yes. Right. And I guess that gets into the question of the adequacy of a state remedy, and that's something else that got a good deal of discussion in Magistrate Judge Stewart's opinion when she points out that there is no statutory mechanism available within the state of Oregon for challenging these decisions, that the only claim that exists is a constitutional challenge under the Oregon Constitution. And why does that matter? Well, it matters because, as she points out, it's by showing that there is no available statutory remedy, that the only remedy is available under the Oregon state constitution. The remedy that's provided under the state constitution may not provide just compensation, as does the Fifth Amendment. And so, as she pointed out in an opinion cited in her opinion, or findings and recommendations, rather, it turns the standard analysis on its head where the federal constitution, instead of providing a floor below which you cannot go, within the Oregon scheme of things, it flips it on its head and it establishes a standard. I don't understand that. If it doesn't afford just compensation, then you can go to federal court and say, I didn't get just compensation. That's the whole point of Williamson, is first you have to show that you didn't get just compensation. So, what's the problem? I mean, in other words, the whole point of Williamson is you need to demonstrate that the state is not giving you just compensation. So, if you don't get just compensation, then you can go to federal court and get just compensation. Exactly. And I think the way that fits into her analysis, as I understand it, is, first of all, it is a prudential rule in Williamson. And because it is a prudential rule. It doesn't seem to me to be prudential. It seems to me to be substantive. That is, it's in order to allege a cause of action. It's not jurisdictional. But in order to allege a cause of action, you have to demonstrate that you didn't get just compensation, you couldn't get just compensation. Well, yes. And, well, this case, the way it comes before this court, when it was originally pleaded, it had several causes of action that were pleaded. One of those was the equal protection violation. And at that point, there were the inverse condemnation claims under state and federal law. There was an equal protection claim. There was a fraud claim. And when Magistrate Judge Stewart was addressing the Williamson issues, it was in the context of whether or not the federal court should continue to exercise supplemental jurisdiction over the claim under the Oregon Constitution. Counsel, you're down to a minute. Did you wish to save any rebuttal time? Oh, yes. Thank you very much, Your Honor. I certainly do. May it please the Court. Counsel. Good morning, Your Honors. I'm Stephen Madcourt for Defendant Clackamas County. In fact, Mr. Emmer does have available remedies within the state of Oregon for an inverse condemnation claim. With the dismissal of this case by Judge Hernandez, he, in fact, filed an inverse claim in Clackamas County Circuit Court where it remains viable today. A little context is important for this case. It was initially filed in 2013. There are at least five amended, maybe six, pleadings filed by plaintiff complaint and various amended complaints, at least four motions to dismiss. The matter had been heard by four district court judges. Judge Hubel dismissed some portions of it. Magistrate Judges Yu and Stewart dismissed portions of it. Finally, District Court Judge Marco Hernandez dismissed the complaint in its entirety because after all those efforts, plaintiff had been admonished by every single one of those judges. Clean up your pleadings, your fraud claim, your equal protection claim, your inverse claim, your condemnation blight claim, breach of contract claim. Is the condemnation blight claim different than the inverse condemnation claim? It really is to a certain extent, Your Honor. It goes towards damages to a certain extent. The condemnation blight does. Condemnation blight in its own right does. Maybe it's different than, maybe he's right. Maybe he doesn't have to go through Williamson. I thought it basically is an inverse condemnation claim. Well, Williamson controls because it says that you need a final decision from the local governmental entity that you are seeking compensation from, prong number one, which indisputably did not happen here. Number two. Well, I don't know about that. I mean, because it's amorphous, it's hard to say what a final decision would look like. But it seems that prong two is the larger problem. But it is, the Oregon remedy would be an inverse condemnation remedy. So if it's not an inverse condemnation claim, then maybe he doesn't have a remedy. Oh, there's, Oregon recognizes condemnation blight theories. He would have to plead it with particularity, certainly. Just for my edification, what, isn't a condemnation blight theory essentially a theory that because of what you did, I, you essentially took my property in some sense and you owe me money? And why isn't that the same as an inverse condemnation claim? It's along the lines. It really is because of what you're planning. Okay. Fine. How does that change the finality analysis? Because ordinarily, as I understand Williamson, the decision of the local governmental entity has to be final. And that is easy to see in a typical case, but with this sort of blight theory, what is the final thing that is being challenged? A property owner, your honor, would have to apply for something. They would have to say, I would like to build my warehouse on this particular piece of property. There would have to be governmental action that responds to that. That did not happen in this case. He alleged it happened to a variety of properties, that because of this proposed road, people were dissuaded from doing it. Not once did he point to any official government action. He tried to implicate a planning director and another low-level county employee. And as we know, Monell doesn't recognize 1980. What does Monell have to do with this? Excuse me? What does Monell have to do with this? Nothing. Then why are you getting into it? Well, I'm getting into it because he's trying to establish Monell by the actions of the employees itself. And the isolated conduct of an employee does not rise to the level of Monell liability under 1980. No, but it could invoke condemnation if a single person can condemn the property. I mean, a single actor condemns property. Government doesn't act by a single... County government doesn't act by a single person. We have a five-member governing board, which is the final decision-maker. A low-level county employee doesn't bind the government. Well, but then in your theory, leaving Williamson aside, his set of allegations, i.e. people were going around, you know, they had it in for me and they were going around and telling people because they wanted to get this property cheap in the long run or at least preserve their option to do that. So they were going around and telling people they couldn't buy the property. Now, that doesn't, I mean, that doesn't sound very plausible as opposed to they were telling people, if you buy the property, then we may condemn it. So, you know, it's not a good idea. But he says they told him they couldn't buy the property and he says they told people that they refused to give use permits and so on. Suppose all that was true and it wasn't done. It was done by whomever it was done by. He has no cause of action is what you're saying. He has a state law remedy available to him, which he is trying to avail himself of presently. But the state law remedy you're saying wouldn't fly either, as I understand it, because nobody actually made a decision to do anything. He would have to explore that further in under the Oregon Constitution. So where there's no no county decision whatsoever, what would he do? You have to have a final decision that for that claim, but you could have a fraud claim. Precisely. You could have the fraud claim. You could have the breach of contract. You could have interference with economic relations, all of which he asserts are state tort claims. Absolutely. Oh, absolutely. And in Oregon, we don't have like a Manel liability. I mean, it goes right to the government itself. Like you do have vicarious liability in Oregon for the acts. You don't need the Manel theory itself. So again, he does have those available to him, but you still have to get to some level of government action and saying that somebody told you a road's going to be going through there hasn't been recognized by the courts in Oregon or federally that that is enough to implicate 1983 Manel or any other type of liability. At this point, the court gave him years to plead fact sufficient to put the county defendants on notice to get something before the court. Let me ask you a detail of that. On the fraud claim, the original, one of the original magistrate judges said what seems to me to make sense, which is you don't have to allege a date of discovery in your pleadings in a fraud claim. But nonetheless, he was, I gather that view was rejected and he was told several different times that he had to allege a date of discovery. Why did he have to allege a date of discovery? Oregon has a tort claim notice provision. You have to give government notice of a potential tort claim. He said he did. It also has a statute of limitations. Right. But you don't usually have to plead yourself into the statute of limitations usually, but that's the defendant's problem. You have to align your theories of discovery, date of discovery for your tort claims within your pleading itself. And that's what Judge Hernandez says. Sorry, I don't understand what that means. Well, he said that they have two different dates. They allege in their fifth amended complaint, I believe is what it was, the one that was dismissed by Judge Hernandez. But that's because he was forced to plead a date. Why did he have to plead a date at all? You have to bring yourself into a statute of limitations. Some of these things arose in the late 90s according to their complaint itself. But people who are now gone, dead, this person told me in 1999 about something. But why is that a pleading issue and not something that can be discussed at Well, you have to plead that you're within the statute of limitations in Oregon to have the claim survive for the tort claim purposes. Do you have authority for that proposition? I'm sorry, Your Honor. Do you have authority for that proposition? Rule 9 certainly doesn't say that, right? Not off the top of my head. It's not in Rule 9. It is not. But Rule 9 does require specificity with your particularity with your fraud claim. Right. That was the basis of Judge Hubel's dismissal. Judge Hernandez said, we gave him specific instructions what to plead for They all went to the date. And the question is, why did he have to plead the date? It wasn't just the date, though. It was like, what is the action here that's necessarily being complained of? Somebody told you something and you're implicating the government for a misrepresentation, perhaps, of, again, a county employee. So their level of government involvement I'm sorry. Go ahead. You said earlier that there's no Monell problem in Oregon. So that would be a valid allegation. I mean, to some degree, this is sort of Ick Bauer on Wilde as to their fraud claim. I mean, he said that somebody told him his people such and such. And he had names in there. And substantively, what more did he need? If you were to look at the first amendment or the first complaint and the subsequent amendment versions, it leads off with general allegations of what an astute and successful businessman plaintiff is and his long dealings with the public entities and the county and other people. So to suggest that he was duped into things by a low-level county employee, I think, is disingenuous and really inconsistent with their actual allegations of the complaint itself. So, again, we think that the district court got it right. After five years of litigating back and forth, begging plaintiff, give me sufficient facts to move this case forward. Four different district court judges. Finally, they said no, enough is enough. Thank you, counsel. Thank you, your honor. You have some rebuttal time, Mr. McMillan. Thank you, your honor. Your honor, let me briefly address the question of the statute of limitations, the tort claim notice, insofar as they relate to the fraud claim. Under state law, one has to provide a tort claim notice if one is to sue the county, in this case, for a tort. That's why it was necessary to demonstrate in pleading the fraud claim that plaintiff did not know of the existence of a claim until a certain date, and that particular date was with 180 days. All right, well, if you're agreeing you have to allege it, then fine. I mean, then there is a problem because you've alleged several different things in, at different times in different places, including in one complaint at the same time. But they relate to two completely different things. The fraud claim was based upon the county's promise to purchase at one time or another four of the pieces of property, and only related to those four pieces of property. The condemnation cloud blight theory, which is not a tort that requires a tort claim notice to the county, exists with respect to all of the cases. Thank you, Counselor. You've exceeded your time, and I think we understand your position. We appreciate the arguments of both counsel, and this case is submitted for decision. Our next case on the docket is United States versus Duckett.
judges: Graber, Berzon, Tunheim